UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JET TEST AND TRANSPORT, LLC, *et al.*, <br><br>             Plaintiffs, <br><br>      v. <br><br> HALLMARK INSURANCE COMPANY, <br><br>             Defendant. | Case No. 2:19-cv-01938-KJD-DJA <br><br> ORDER |

    Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment (#19). Defendant filed a response in opposition (#25) to which Plaintiffs replied (#26). Also before the Court is Defendant's Motion for Summary Judgment (#20). Plaintiffs filed a response in opposition (#24) to which Defendant replied (#27).

<u>I. Facts</u>

    A. BACKGROUND

    This action arises from a June 23, 2013 airplane crash. Plaintiff Jet Test and Transport, LLC ("Jet Test") was the owner of the aircraft, a 1955 Beechcraft T34 Mentor, FAA Registration Number N434M ("T34"). Plaintiffs Gloyd Robinson and Steven Giorando are the LLC's sole members. Joseph Edwards IV ("Edwards") was the T34's pilot. On the T34's final flight, Cody Hall was Edwards' sole passenger. Both Edwards and Hall perished in the crash. The T34 was destroyed.

    The last annual inspection for the T34 for which there is documentation was performed on March 1, 2012. To maintain the airworthiness certificate an aircraft must undergo an annual inspection. Before the T34 could be put back into service the annual inspection must be

appropriately documented in the maintenance records (14 CFR §§43.9(a) and 43.11).[1] Jet Test never saw a logbook or maintenance record entry documenting a 2013 annual inspection or asked Edwards whether a 2013 annual inspection was entered into a maintenance record.

A Jet Test agent, David Pinegar, flew the T34 from its hangared location in Henderson, Nevada to the North Las Vegas airport for an annual inspection by Edwards. This flight occurred in late March 2013, days before the expiration of the airworthiness certificate. Edwards replaced all six cylinders on the T34's engine. After replacing the cylinders, Edwards flew to Chandler, Arizona to complete the eddy current spar check (a required maintenance inspection of the T34's wings). Before that flight, Edwards stated to plaintiffs, in writing, that he didn't "have any time in a T34". Plaintiffs never saw Edwards' pilot logbook, asked Edwards if he kept a pilot logbook or asked to see Edwards' pilot logbook.

While in Arizona, on Saturday, June 22, 2013, months after the expiration of the airworthiness certificate, Edwards e-mailed Jet Test: "In AZ with the plane right now, the inspection was a nightmare, spent all day running around trying to find a drill and some rivets. Just got it done, paperwork and all. Flying it back in the morning, she's flying great and the cht's [cylinder head temperatures] are coming down, and equalizing great."

On June 23, 2013, Edwards, with passenger Cody Hall flew the T34 from Arizona back to Las Vegas. The T34 crashed on that return flight. The National Transportation Safety Board (''NTSB'') Final Report noted that:

> Postaccident examination of the engine revealed that the No.6 cylinder had separated, and no nuts were located on its through bolts. Magnified examinations of the bolt threads found the thread profiles intact and only locally distorted, consistent with the nuts not being present during the No.6 cylinder separation, which appeared to be the result of the incorrect assembly of the cylinder at the last cylinder change.

The NTSB Final Report determined that the probable causes of the accident were: "[t]he pilot/mechanic's loss of control during an emergency descent following a loss of engine power

---

[1] Even though the parties regularly use the word "logbooks", the regulations use the term "maintenance records[.]" See 14 C.F.R. § 43.9(a), 43.11(a). For the purposes of this order the Court assumes a reference to logbook means maintenance record and vice versa.

while in cruise flight. Contributing to the accident was the pilot/mechanic's incorrect assembly of the No.6 cylinder at the last cylinder change, which resulted in a separation of the cylinder and the loss of engine power."

The NTSB Final Report stated that the last annual inspection was performed on March 1, 2012. Pursuant to 14 CFR section 91.409(a)(1), the next required annual inspection was due within twelve calendar months, i.e., no later than April 1, 2013.

Jet Test, as owner of the aircraft, was obligated under 14 CFR § 91.405 to "have that aircraft inspected. . . [and] shall *ensure* that maintenance personnel make appropriate entries in the aircraft maintenance records indicating the aircraft has been approved for return to service" (emphasis added). Although the T34 was allegedly delivered to Edwards in March 2013, some three months before its final flight, Jet Test never made "certain" or "ensured" that Edwards had made the appropriate entries in the T34's log books indicating that it had been approved for return to service. There is no admissible evidence that any such entries were ever made.[2]

14 CFR § 91.407 states:

> (a) No person may operate any aircraft that has undergone maintenance, preventive maintenance, rebuilding, or alteration unless
>
> (1) It has been approved for return to service by a person authorized under § 43.7 of this chapter; and
> (2) The maintenance record entry required by § 43.9 or § 43.11, as applicable, of this chapter has been made.

14 CFR section 43.9(a) states:

> (a) Maintenance record entries. Except as provided in paragraphs (b) and (c) of this section, each person who maintains, performs preventive maintenance, rebuilds, or alters an aircraft, airframe, aircraft engine, propeller, appliance, or component part shall make an entry in the maintenance record of that equipment containing the following information:
> (1) A description (or reference to data acceptable to the Administrator) of work performed.
> (2) The date of completion of the work performed.
> (3) The name of the person performing the work if other than the person specified in paragraph (a)(4) of this section.
> (4) If the work performed on the aircraft, airframe, aircraft engine,

---

[2] The only evidence produced to the Court are the hearsay statements of Edwards made to the principals or agents of Jet Test.

- 3 -

propeller, appliance, or component part has been performed satisfactorily, the signature, certificate number, and kind of certificate held by the person approving the work. The signature constitutes the approval for return to service only for the work performed.

B. THE INSURANCE POLICY

Hallmark had issued an Aircraft Insurance Policy ("the Policy") to Jet Test, effective December 18, 2012 to December 18, 2013, number GA99-33884-00. The Policy provided specified coverage for the T34. Under the Hallmark policy, paragraph 3, Requirements for the Pilot Flying the Aircraft, states:

> "[y]ou must make certain that the pilot operating the aircraft in flight meets the requirements shown in Item 9 of the Coverage Identification Page. There is no coverage under the policy for any accident or occurrence involving operation of the aircraft in flight if the pilot does not meet these requirements"

Item 9 of the Coverage Identification Page states:

> REQUIREMENTS FOR THE PILOT FLYING THE AIRCRAFT: The aircraft must be operated in flight only by a person having the minimum qualifications shown below. The pilot must have a current and valid (1) medical certificate, (2) flight review and (3) pilot certificate with necessary ratings, each as required by the FAA as required for each flight. THERE IS NO COVERAGE IF THE PILOT DOES NOT MEET THESE REQUIREMENTS.
> AS ENDORSED [Emphasis in original.]

Endorsement No. 1 to the Policy, Requirements For The Pilot Flying The Aircraft, states in pertinent part, as follows:

> MINIMUM REQUIREMENTS FOR PILOT, PILOT CERTIFICATE, RATINGS AND LOGGED FLYING HOURS:
>
> 1. Gloyd Robinson
>
> 2. Any other person
>
> Provided he/she holds a private pilot certificate with airplane single engine land/instrument rating(s) and has a minimum of 1,000 total logged hours, including not less than 250 hours in retractable gear aircraft and 25 hours in the same make and model aircraft.

C. THE PRESENT ACTION

On June 21, 2019, Jet Test filed this coverage action against Hallmark. The complaint

alleges causes of action for declaratory judgment, breach of contract and indemnification. Plaintiffs contend that Hallmark owed a duty to defend and indemnify Plaintiffs in the underlying action against them by Hall's estate and family. Jet Test and Hallmark have now moved for summary judgment in this action, Plaintiffs asserting, that at the least, Defendant Hallmark had a duty to defend them in the underlying action. Defendant Hallmark has also moved for summary judgment asserting that Plaintiffs failed to establish the existence of conditions precedent to coverage which precluded Hallmark's defense and indemnity.

II. STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment may be granted if the pleadings, depositions, affidavits, and other materials in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Uncorroborated and self-serving testimony, without more, will not create a genuine issue of material fact. See Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory or speculative testimony is also insufficient to raise a genuine issue of fact. Anheuser Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once that burden is met, the nonmoving party then has the burden of setting forth specific facts demonstrating that a genuine issue exists. See Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e). If the nonmoving party fails to make a sufficient showing of an essential element for which it bears the burden of proof, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 322-23.

///

///

III. ANALYSIS

An insurance contract, in the absence of any ambiguity or other factual complexities, presents a pure question of law. See Fed. Ins. Co. v. Coast Converters, Inc., 339 P.3d 1281, 1284 (Nev. 2014). The Court "will not rewrite contract provisions that are otherwise unambiguous . . . [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." United National Ins. Co. v. Frontier, 99 P.3d 1153, 1156-57 (Nev. 2004). When a contract is clear on its face, it will be construed from the written language and enforced as written. Canfora v. Coast Hotels and Casinos, Inc., 121 P.3d 599, 603 (Nev. 2005).

"A party who seeks to recover on an insurance policy has the burden of establishing any condition precedent to coverage." Lucini-Parish Ins. v. Buck, 108 Nev. 617, 620 (1992); see also County of Clark v. Factory Mut. Ins. Co., 2005 U.S. Dist. LEXIS 47574, *6 (D. Nev. 2005). "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." Las Vegas Metro. Police Dep't v. Coregis Ins. Co., 127 Nev. 548, 553 (2011); see also Valentine v. State Farm Mut. Auto. Ins. Co., 105 F.Supp.3d 1176, 1182 (D. Nev. 2015); Insurance Co. v. Cassinelli, 67 Nev. 227, 244-45 (1950) (superseded by statute). "Nevada law enforces coverage conditions and precludes coverage when a violation of such a condition occurs, irrespective of prejudice to the carrier." Joseph v. Hartford Fire Ins. Co., 2014 U.S. Dist. LEXIS 138431, *5 (D. Nev. 2014).

A. Pilot Qualifications Conditions

Paragraph 3, Requirements for the Pilot Flying the Aircraft, states: "[y]ou must **make certain** that the pilot operating the aircraft in flight meets the requirements shown in Item 9 of the Coverage Identification Page. There is no coverage under the policy for any accident or occurrence involving operation of the aircraft in flight if the pilot does not hold "a private pilot certificate with airplane single engine land/instrument rating(s) . . . and 25 hours in the same make and model aircraft."

///

///

### 1. Effect of Paragraph 3

#### a. Ambiguity

Plaintiffs' first argument is that the phrase "make certain" is ambiguous. Generally, if a clause in a contract is ambiguous, it will be construed against the drafter. Bidart v. Am. Title Ins. Co., 734 P.2d 732, 734 (1987). The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted. Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011) (internal citations omitted). Because the insurer is the one to draft the policy, an ambiguity in that policy will be interpreted against the insurer. Id. While clauses providing coverage are interpreted broadly to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer. Id. Ultimately, a court should interpret an insurance policy to effectuate the reasonable expectations of the insured. Id. "It is, of course, well established that an insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume." Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 430 (9th Cir. 2011). Policy provisions that incorporate FAA requirements are enforceable. Avemco Ins. Co. v. Davenport, 140 F.3d 839, 843 (9th Cir. 1998); Griffin v. Old Republic Ins. Co., 133 P.3d 251, 254-55 (Nev. 2006).

The Court does not agree that the term "make certain' is vague. Paragraph 3 clearly puts the burden of determining the pilot's qualifications on the insured. That phrase places an affirmative obligation on Jet Test to "make certain" that the pilot was qualified to operate the T34 and that the T34 had a current airworthiness certificate. See *Certain*, Webster's II New Riverside University Dictionary, (1988) (defining "certain" as "established beyond question or doubt"). Therefore, the insured, Plaintiffs, were required to establish beyond question or doubt that Edwards had more than 25 hours flying a T34. Self-serving hearsay does not establish a fact beyond question or doubt.

#### b. Conditions Precedent

The obligations placed on Jet Test are conditions precedent under the policy. "Conditions precedent frequently involve something that the insured must do while exclusions involve

- 7 -

something that the insured must not do[.]." Gen. Cas. Ins. Co. v. Penn-Co Constr., Inc., 2005 U.S. Dist. LEXIS 3267, at *116-17 (N.D. Iowa 2005). The Hallmark policy states that the insured must "make certain" that the aircraft had an airworthiness certificate in full force and effect, the aircraft did not need a special flight permit, and the pilot was qualified to fly the aircraft. These are things that the insured must do before there can be a potential for coverage.

Jet Test did not make certain that Edwards had the 25 logged hours of flying the T34, instead relying on hearsay statements. See Ideal Mutual Ins. Co. v. Last Days Evangelical Assoc., 783 F.2d 1234, 1240 (5th Cir. 1986) ("[plaintiffs] did not produce any evidence of logged hours that would have supported Burmeister's claims on the pilot form submitted to [the insurer]. [Plaintiffs'] failure in this regard supports the district court's conclusion that [plaintiffs] breached the policy"). Jet Test's failure to satisfy those conditions precludes any coverage for the crash. See, e.g., North Am. Specialty Ins. Co. v. Myers, 111 F.3d 1273, 1280 (6th Cir. 1997) (insurer had no duty to defend the pilot's estate against a personal injury lawsuit following a plane crash because the insured never recorded in a log book that he had flown twenty-five hours in the same make or model of aircraft).

Jet Test never provided any indisputable evidence that Edwards met all requirements under the Hallmark policy. Indeed, just days before the crash, Edwards admitted to Jet Test, in writing, that he didn't "have any time in a T34". The problem with all of Jet Test's evidence on Edwards' T34 flight hours is that it is hearsay and does not fall within an exception to the hearsay rule. Despite Edwards' unavailability due to his death, none of the exceptions apply. See Federal Rule of Evidence 804(b). Further, Plaintiffs' argument that the statements regarding Edwards' flight time should be admitted under the residual exception, Rule 807(a) must be denied because the statements are no supported by sufficient guarantees of trustworthiness. See Rule 807(a)(1).

Further, the contract places the burden to "make certain" squarely on the insureds. Therefore, their argument that Hallmark should have pursued various leads to confirm Edwards' T34 hours misstates the requirements of the contract. The contract requires the insured to 'make certain' the pilot has the correct qualifications, not the insurer. Therefore, because Plaintiffs

failed to fulfill the condition precedent to make certain that the pilot had the qualification of twenty-five flight hours in a T34, Defendant Hallmark did not have a duty to defend or indemnify Plaintiffs.[3]

### c. Hallmark's obligations under the contract

The liability coverage in the Hallmark policy has a separate defense provision under the "additional protection" terms, which states:

> We will:
>
> a. Defend Claims
>
> Defend at our expense with attorneys we choose, any claim or legal action against you or someone we protect with respect to any claims for bodily injury or property damage resulting from an occurrence we cover[.]

The defense obligation under the Hallmark policy applies only to claims Hallmark covers. This language is narrower than the insuring agreement interpreted in Frontier and its progeny, which interpreted insuring agreements such as: "Underwriter shall have the right and duty to defend any suit against the Assured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . ." Frontier, 99 P.3d at 1155. The policy in Frontier provided a "duty to defend" any suit "even if any of the allegations of the suit are groundless, false or fraudulent", and accordingly, the court concluded that a defense duty required a potential for coverage. The Hallmark policy does not have a "duty to defend" and extends only to claims that are "covered" under the policy. Accordingly, the Court denies Plaintiffs' motion for partial summary judgment on the duty to defend.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment (#19) is **DENIED**;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (#20) is

---

[3] Similarly, Plaintiffs failed to adduce admissible evidence that the T34 had a current airworthiness certificate or was operating under a special flight permit. However, since the pilot lacked proof of the requisite flight hours, it is unnecessary for the Court to reach these issues.

1 **GRANTED**;

2 IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiffs.

DATED this 30th day of September 2021.

_____
The Honorable Kent J. Dawson
United States District Judge